**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


| | |
|---|---|
| **ROBERT BAUER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-5013** |
| **DEAN MORRIS, L.L.P., ET AL** | **SECTION "K"(2)** |


<u>**ORDER AND OPINION**</u>


Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr.,  John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau  (referred to collectively herein after as "Dean Morris") (Doc. 194) seeking to dismiss all claims of plaintiff Terese LaBeaud against Dean Morris.   Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

BACKGROUND[1]

 On May 15, 1998, Terese LaBeaud executed a promissory note payable to Treasure Coast Mortgage Corporation for $44,376.00. Ms. LaBeaud  secured the promissory note with a mortgage on property located at 6237 Craigie Road, New Orleans, Louisiana. (Doc. 166-3,  Ex. 1). The Federal Housing Administration insured the loan.  <u>Id.</u>  That same day Treasure Coast Mortgage Corporation assigned the note and mortgage to Chase Manhattan Mortgage Corporation ("Chase").  <u>Id.</u>

---

[1] In urging its motion for summary judgment, Dean Morris adopts the memoranda and exhibits filed by Chase Home Finance, L.L.C., successor by merger to Chase Manhattan Mortgage Corporation, with respect to the facts and the procedural posture of the case as well as Chase Home Finance, L.L.C.'s contention that plaintiff's tort claims should be dismissed because Mrs. LeBeaud sustained no damages.  (Doc. 194-1, pgs. 1, 5).

Beginning in early 2003, Mrs. LaBeaud failed to make her monthly payment on the note and mortgage. (Doc. 166-3, Ex. 2).  On February 14, 2003, Chase notified Mrs. LaBeaud that her loan was in arrears a total of $886.35, which represented monthly mortgage payments for January and February 2003 as well as the late fees for those months.  (Doc. 166, Ex. A4).  In March 2003, Mrs. LaBeaud made a payment to Chase; however, it was less than the amount required to bring the loan current.  (Doc. 166-3, Ex. A, ¶10).  Thereafter Mrs. LaBeaud failed to make any additional payments.  On May 16, 2003, Chase sent Mrs. LaBeaud a monthly loan statement reflecting an arrearage of $2,287.63.  (Doc. 166-3, Ex. C).

On July 2, 2003, Dean Morris, acting on behalf of Chase,  filed a petition in the Civil District Court for the Parish of Orleans,  seeking an ordinary process foreclosure on the mortgaged property.[2] On July 7,2003, Dean Morris provided Mrs. LaBeaud with a Reinstatement Proposal indicating the following amounts:

| | |
|---|---|
| Payments Due | 2,457.24 |
| Late Charges | 102.81 |
| Inspections | 78.00 |
| Foreclosure Attorneys Fees and Costs | 2,220.64 |
| Total | 4,858.69 |

Doc. 217-1,  Ex. 1.  The Reinstatement Proposal does not indicate that it is an "estimate." Rather, the "Reinstatement Proposal" states, in pertinent part:

> Reserving to Lender the right to demand additional funds to correct any error or omission in these figures made in good faith whether mathematical, clerical, typographical, or otherwise and to reflect any transactions that may occur on or subsequent to the date of this reinstatement, the [] amounts are the amounts the lender will accept to waive the existing default and the acceleration of the mortgage

---

[2] On August 28, 2003, on motion of Chase, the state court dismissed this ordinary process foreclosure action without prejudice.  Doc. 166, Ex. E.

> loan, and to dismiss without prejudice, any pending foreclosure suit ("Reinstatement").

Id.

In August 2003, Dean Morris, on behalf of Chase, filed a "Petition for Executory Process" in the Civil District Court for the Parish of Orleans, seeking, among other things, a writ of seizure and sale to sell the mortgaged property. Thereafter on August 13, 2003, Dean Morris issued a second Reinstatement Proposal to Ms. LaBeaud; it represented that the following sums were owed:

| | |
|---|---|
| Payments Due | 2,866.78 |
| Late Charges | 135.57 |
| Inspections | 95.00 |
| Foreclosure Attorney's Fees and Costs | 3,409.92 |
| TOTAL | 6,507.27 |

That Reinstatement Proposal included the same reservation language previously quoted herein above. (Doc. 217-4, Ex. 4). Dean Morris subsequently sent Mrs. LeBeaud a third Reinstatement Proposal. It also contained the same reservation language as the prior Reinstatement Proposals and stated that the following sums were owed:

| | |
|---|---|
| Payments Due | 3,697.15 |
| Late Charges | 168.33 |
| Inspections | 112.00 |
| Foreclosure Attorney's Fees and Costs | 4,759.82 |
| TOTAL | 8,737.30 |

Doc. 217-4, Ex. 7.

Following the filing of Chase's executory process petition, the state court judge signed an order that a writ of seizure and sale issue, and the Civil Sheriff for the Parish of Orleans seized the property for sale. (Doc. 166, Ex. F, Ex. G, and Ex. H). The writ amount for Mrs. LaBeaud's property was $42,222.50. (Doc. 166, Ex. I). On October 30, 2003, Chase purchased the property at the foreclosure sale for $1,700.00. Id.

On February 17, 2005, Mrs. LaBeaud, as well as a number of other plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the Parish of Orleans. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." Fourth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ X, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris. Dean Morris now seeks summary judgment on all of Mrs.

4

LaBeaud's remaining claims.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

### Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims.  To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury."  *Systems Engineering and Security, Inc.  v. Science & Engineering Associations, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted).  Plaintiff asserts  that the Reinstatement Proposals  issued by Dean Morris  included inflated attorneys fees and costs.

No extensive analysis of each of the elements of an intentional misrepresentation claim is necessary.  The Court finds persuasive Dean Morris's contention that plaintiff cannot prevail on this claim because she sustained no damages as a result of the alleged misrepresentations.

It is undisputed that plaintiff paid nothing directly to Dean Morris after receiving the Reinstatement Proposals, and that plaintiff made no payment to Chase after Dean Morris sent the initial Reinstatement Proposal to Mrs. LeBeaud.   However, plaintiff asserts that she sustained emotional damages due to the alleged misrepresentations.

Mrs. LeBeaud has not cited any authority addressing the standard for awarding emotional damages for intentional misrepresentation, nor has the Court located any such authority.  In the absence of such authority, the Court concludes that a claim for emotional damages for an intentional

misrepresentation is analogous to a claim for damages from a negligent or an intentional infliction of emotional distress, and that the same test should apply in determining whether a plaintiff is entitled to recover such damages.

Louisiana tort principles permit recovery for damages for negligent or intentional infliction of emotional distress unaccompanied by physical injury "only in special circumstances which serve to guarantee against spurious claims. Accordingly, we have held that only one who by extreme and outrageous conduct intentionally or negligently causes severe emotional distress to another is subject to liability for such damages. Minimal and normal inconvenience is not compensable." *Arco Oil & Gas Company v. DeShazer*, 728 So.2d 841, 844 (La. 2009); citing *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991). Plaintiff has not submitted any evidence that she sustained a physical injury. Moreover, plaintiff has not presented sufficient evidence to raise a genuine issue of material fact concerning whether she sustained "severe emotional distress." At her deposition Mrs. LaBeaud testified that she was "very emotional" during the foreclosure and sale of her home, that "it was devastating," and that she "felt so humiliated." Doc. 217-8, Ex. 8, pgs. 118, 136-137. That testimony is insufficient to raise a genuine issue of material fact under the stringent test of *Arco*. Thus, Dean Morris is entitled to summary judgment on plaintiff's claim of intentional misrepresentation.

Dean Morris is similarly entitled to summary judgment on Mrs. LaBeaud's claim of fraud. "Fraud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable

reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d 557, 563 (La. App. 4th Cir. 2009). Because the analysis of the damages issue on the fraud claim is identical to that  articulated in connection with plaintiff's claim for intentional misrepresentation, Dean Morris is entitled to summary judgment on plaintiff's fraud claim.

Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property.  The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession.  But, there must be either a wrongful taking or a wrongful detention. " *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957).   Dean Morris has submitted evidence establishing that neither it nor Chase collected any foreclosure fees and/or costs from Mrs. LaBeaud.  (Doc. 166-3, Ex. A, Ex. A3).  Plaintiff  has not submitted any evidence disputing Dean Morris's evidence. Considering the undisputed evidence that plaintiff made no payment to Dean Morris, plaintiff has failed to raise a genuine issue of material fact concerning whether Dean Morris wrongfully deprived her of any property.  Therefore, summary judgment dismissing this claim is appropriate.

Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part,  that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are:  (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence

8

of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for summary judgment on this claim urging that because plaintiff has other remedies available to her, she cannot state a claim for unjust enrichment. Defendant's contention is well founded. Other remedies are, in fact, available to plaintiff, e.g., intentional misrepresentation. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* Similarly, "the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy available at law (subidiarity)." *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989). That Mrs. LaBeaud failed to prevail on the other remedies available to her does not negate the fact that such remedies were available. The availability of an alternative remedy bars Mrs. LaBeaud's claim for unjust enrichment and entitles Dean Morris to summary judgment on plaintiff's claim of unjust enrichment.

Civil Conspiracy

9

Article 2324A of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted). As noted herein above, Mrs. LaBeaud has failed to establish a genuine issue of material fact with respect to a tort claim against Dean Morris. Because Dean Morris is entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort claim for plaintiff's civil conspiracy claim. Therefore, Dean Morris is also entitled to summary judgment on the civil conspiracy claim.

Moreover, even assuming *arguendo* that Mrs. LaBeaud had raised a genuine issue of material fact with respect to a predicate tort offense, Dean Morris would nonetheless still be entitled to summary judgment on this claim. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence to establish the requisite agreement to commit a tort. In the absence of evidence of an agreement to commit an underlying tort, Dean Morris is entitled to summary judgment on this claim.

10

<u>Breach of Contract</u>

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Bauer v. Dean Morris*, Fourth Supplemental and Amending Petition for Damages, ¶ XIV.   Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Mrs. LaBeaud. Plaintiff claims that she is a third party beneficiary of the contract between Dean Morris and Chase which she alleges provides for a maximum "allowable" attorney fee of $900.00 for handling a full foreclosure proceeding on a federally insured mortgage.   The parties agree that the relevant mortgage was a federally insured mortgage.

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978.   Because the Civil Code does not specify the analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed. *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010).   Here, no analysis of the individual criteria is required.   Even assuming *arguendo* that the contract between Chase and Dean Morris includes a stipulation *pour autrui* in favor of Mrs. LeBeaud, she has not offered any evidence establishing that Dean Morris received a fee in excess of the alleged "allowable" attorney fee permitted under the contract.   That lack of evidence dooms plaintiffs breach of contract claim and entitles Dean Morris to summary judgment on plaintiff's claim that she is entitled to recover

damages for Dean Morris's breach its contract with Chase.

Plaintiff also alleges that under the terms of her mortgage she had a right to reinstate a delinquent loan, and that Dean Morris, by misrepresenting the amount of attorney's fees and costs which had to be paid to bring the loan current, deprived her of the right to reinstate her loan. Dean Morris is entitled to summary judgment on this claim as well. Mrs. LaBeaud has not submitted any competent summary judgment evidence that absent the alleged misrepresentations by Dean Morris she would have had the financial resources to reinstate her loan and mortgage. In fact, the evidence in the record establishes that in early 2003, months before Dean Morris's first contact with plaintiff, Mrs. LaBeaud lacked the means to pay the past due principal and interest on her loan and the late fees. During her deposition Mrs. LaBeaud testified that in February 2003 she could not make the outstanding payments on her loan because, despite being employed, she "knew that wouldn't have been enough to just - - because I had a light bill, I had a water bill, I had other circumstances that had to be met so I needed a loan to help me out to pay that. And I was willing to do that." Doc. 166, Ex. B, p. 52. Mrs. LaBeaud also testified that during that time period she asked relatives for help but that they did not have the money to help her. Id. at 54. Mrs. LeBeaud further testified that in early 2003 she owed $886.55 on her home loan and that she did not speak with anyone other than her relatives to attempt to obtain the past due amounts. Id. In May 2003, she "did not have the money" to pay Chase the $2,287.63 owed to it. Id. at 84. The cited testimony all relates to Mrs. LaBeaud's inability to reinstate her loan *prior* to Dean Morris's first contact with her. Moreover, plaintiff has not offered any evidence that at any time subsequent to Dean Morris's alleged misrepresentations she obtained sufficient financial resources to pay even the delinquent monthly principal, interest payments, and late fees, which plaintiff does not dispute were owed to Chase.

Absent such evidence, plaintiff cannot raise a genuine issue of material fact on her breach of contract claim that Dean Morris's alleged misrepresentations deprived her of her right to reinstate her loan. Accordingly, the Court grants Dean Morris's motion for summary judgment and dismisses plaintiff's breach of contract claims.[3]   Accordingly,

**IT IS ORDERED** that all claims of plaintiff Terese LaBeaud against defendants Dean Morris, LLP, George B. Dean, Jr.,  John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau are dismissed.

New Orleans, Louisiana, this 30th day of March, 2011.

_____
   STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] In moving for summary judgment Dean Morris also urged as affirmative defenses to plaintiff's claims prescription and inability to sue an adversary's attorney.  Having concluded for the reasons stated herein above that Dean Morris is entitled to summary judgment on plaintiff's claims, the Court need not address those affirmative defenses.