UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT BAUER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-5013** |
| **DEAN MORRIS, L.L.P., ET AL** | **SECTION "K"(2)** |

ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, L.L.P., George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau (referred to collectively herein after as "Dean Morris") (Doc. 198-2) seeking to dismiss all claims of plaintiff Terry Hardy against Dean Morris. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part and denies it in part.

BACKGROUND

On December 10, 2002, Terry Hardy executed a promissory note payable to Southstar Funding, L.L.C. for $35,000.00. Mr. Hardy secured the promissory note with a mortgage on property located at 7079 Barrington Court, New Orleans, Louisiana. (Doc. 187-2, Ex.A1, A2). The mortgage states that Mortgage Electronic Registration Systems, Inc. (MERS) is the mortgagee of the mortgage. (Doc. 187-2, Ex. A2).

Beginning in October 2003, Mr. Hardy failed to make his monthly payment on the note and mortgage  On January 16, 2004, Dean Morris, acting on behalf of Homecomings Financial ("Homecomings") , the entity servicing the loan, filed a "Petition for Executory Process" in the Civil District Court for the Parish of Orleans, seeking, among other things,  a writ of seizure and sale to

sell the mortgaged property. (Doc. 187-3, Ex. A3). On January 21, 2004, the state judge signed an order granting MERS's request to issue a writ of seizure and sale. (Doc. 187-3, Ex. A4).

On January 27, 2004, Dean Morris sent Mr. Hardy a "Reinstatement Proposal" indicating the following amounts:

| | |
|---|---:|
| Payments Due | 1,306.88 |
| Late Charges | 128.04 |
| Escrow Deficit | 499.01 |
| Suspense | -119.90 |
| NSF | 50.00 |
| Other | 116.99 |
| Foreclosure Attorneys Fees and Costs | 3,190.93 |
| Total | 5,171.05 |

Doc. 187-4, Ex. A7. The "Reinstatement Proposal" does not indicate that it is an "estimate." Rather, the "Reinstatement Proposal" states, in pertinent part:

> Reserving to Lender the right to demand additional funds to correct any error or omission in these figures made in good faith, whether mathematical, clerical, typographical, or otherwise and to reflect any transactions that may occur on or subsequent to the date of this reinstatement, the [] amounts are the amounts the lender will accept to waive the existing default and the acceleration of the mortgage loan, and to dismiss, without prejudice, any pending foreclosure suit ("Reinstatement").

Id. The Reinstatement Proposal was "good through 1.29.04." Id.

On March 4, 2004 Dean Morris issued a second "Reinstatement Proposal" to Mr. Hardy; it identifies the following sums as owed and states:

| | |
|---|---:|
| Payments Due | 1,960.32 |
| Late Charges | 158.04 |
| Escrow Deficit | 1,497.01 |
| Inspections | 94.00 |
| Appraisal/BPO | 105.00 |
| Speed Draft Fee | 11.99 |
| Suspense | - 119.90 |
| NSF | 50.00 |

|  |  |
|---|---|
| Cancellation Fee | 20.00 |
| *Foreclosure Attorney's Fees and Costs | 3,869.79 |
| TOTAL | 7,646.25 |

*THIS IS AN ESTIMATE ONLY and includes foreclosure attorney's fees and expenses and deposits with and/or anticipated charges for costs and commissions due to the clerk of court and sheriff. Following dismissal of the foreclosure suit and final reconciliation and payment of all costs, the balance will be allocated to foreclosure attorney's fees, unless such amount exceeds the amount provided in your mortgage loan contract, in which case the excess will be refunded to you.

Doc. 187-4, Ex. A9. The Reinstatement Proposal was "good through 3/30/04." Id.

On April 2, 2004, Homecomings advised Dean Morris that the matter had been settled and instructed Dean Morris to "close the foreclosure." (Doc. 187-2, Ex. A, ¶ 9ww). Mr. Hardy "refinanced the property" to obtain the money for the settlement. (Doc. 226-7, p. 41-42).

Subsequently, on the motion of MERS, the state judge entered a judgment dismissing the petition for executory process. (Doc. 187-4, Ex.A10). The judgment indicates that "PLAINTIFF COLLECTED $37,515.00." Id. That amount represents $2,623.81 more than the $34,891.19 in principal owed at the time Dean Morris filed the foreclosure, approximately three months before reaching the settlement.

It is undisputed that Mr. Hardy never paid any money to Dean Morris. (Doc. 187-2, Ex. A, ¶11). It is also undisputed that Dean Morris received $875.00 in attorneys fees from Homecomings. (Doc. 187-2, Ex. A, ¶13).

On February 17, 2005, Mr. Hardy, as well as a number of other plaintiffs, filed a putative class action suit in the Civil District Court for the Parish of Orleans against Dean Morris and various lender defendants alleging a variety of claims. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition

alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." Fourth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ X, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV. The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiff's negligence claims against Dean Morris. All of the Dean Morris defendants now seek summary judgment on all of Mr. Hardy's remaining claims.

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

 "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims. To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Systems Engineering and Security, Inc. v. Science & Engineering Associates, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted). In analyzing whether the various Dean Morris defendants are entitled to summary judgment on this claim, the Court will separately address the claims against Dean Morris, L.L.P., the claims against the partners, George B. Dean, Jr. and John C. Morris, III, and the claims against the non-partner lawyers, Charles H. Heck, Jr. and Candace A. Couteau.

Plaintiff urges that the "Reinstatement Proposals" included inflated attorneys fees and costs. To support that contention, plaintiff offered evidence establishing that Dean Morris paid the Orleans Parish Civil Sheriff $1,200.00 in fees in connection with the petition for executory process on Mr. Hardy's property and paid the Orleans Parish Clerk of Court $306.00. Those amounts are considerably less than the amounts shown as "Foreclosure Attorneys Fees and Costs" listed in the Reinstatement Proposals sent to Mr. Hardy. Plaintiff's evidence is sufficient to raise a genuine issue of material fact concerning whether Dean Morris, L.L.P. misrepresented the amount of the attorneys fees and costs. The Court acknowledges that the Dean Morris defendants submitted a Sheriff's invoice dated April 5, 2004, reflecting Sheriff's costs of $2,464.39 ( Doc. 187-2, Ex. 11) and that the Affidavit of George B. Dean, Jr. and John C. Morris, III states that Homecomings paid Dean Morris L.L.P. $4,470.39 which "can be broken down as follows: (a) $2,464.39 (sheriff); (b)

$306.00 (clerk); (c) $125.00 (outsourcer funds); (d) $575.00 (title search/ review/ abstract); (e) $125.00 title curative to clear prior lien; and (f) $875.00 attorney fees. There was no return to Dean Morris [L.L.P.] of all or any part of the security deposit put up with the sheriff." Doc. 187, Ex. A, ¶13. However, because both of those exhibits reflect the costs at a time after Dean Morris, L.L.P. issued the challenged Reinstatement Proposals, the exhibits do not preclude a finding that the Reinstatement Proposals contained a misrepresentation and therefore do not preclude a determination that plaintiff raises a genuine issue of material fact concerning whether the Reinstatement Proposals included a misrepresentation as to the amount of attorneys fees and costs.

The Court further concludes that there is a genuine issue of material fact concerning whether Dean Morris, L.L.P. had an intent to deceive. In the corporate deposition of Dean Morris, L.L.P., Mr. Morris testified, in pertinent part, that:

> [O]ur overall policy really hasn't changed, because our policy has always been to estimate enough to make sure that when we are at risk for the fees and costs that we collect enough to pay all the costs and reserve unto ourselves a reasonable attorney's fee. Our policy has been that all along. Our practices, you know- we've gone through periods of time when we were better at estimating. I mean, in the - I think in the late nineties it was easier because the costs were lower. Something escalated in the early 2000s and we got burned a few times, as I recall, vaguely, and the - the costs would like, come out of nowhere. So, we would add more, you know. We'd kind of deal with it on a - somewhat month-by-month basis, you know. I mean, there might've been hundreds of changes in practices, but our policy was always to estimate enough to make sure that we collected enough to pay all the costs that might accrue, plus whatever is left over would be our attorney's fee, and to make sure that that amount was within the terms of the contract with the borrower and was reasonable an [sic] amount.

Doc. 226-1, Ex. 1, p. 144-145. Additionally, Mr. Morris testified that the firm did not maintain time records for either attorney or non-attorney employees unless the matter was "actively litigated,"

7

which Mr. Hardy's foreclosure was not. Id. at p. 152. Admittedly the issue as to whether the plaintiff has produced sufficient evidence of intent to deceive is close. However, viewing the evidence in the light most favorable to Mr. Hardy and with all factual inferences in his favor as required, the Court concludes that this testimony is sufficient to present a genuine issue of material fact concerning Dean Morris L.L.P.'s intent to deceive plaintiffs, including Mr. Hardy, as to the costs and attorney's fees incurred in foreclosure proceedings.[1]

The Court also concludes that a genuine issue of material fact exists with respect to Mr. Hardy's justifiable reliance on the alleged misrepresentations with resulting injury. Terry Hardy testified in his deposition that he elected to refinance his loan rather than reinstate the loan "[b]ecause the fees, the monetary amount that they were requesting [in the Reinstatement Proposal] was too excessive, and I didn't have over fifty-two hundred dollars at that moment." Doc. 226-7, Ex. 7, p. 41-42. That testimony establishes a genuine issue of material fact concerning Mr. Hardy's reliance on the alleged misrepresentation of fact. Additionally, Mr. Hardy testified that the note on his refinanced loan is "slightly higher" that his prior note. Id. That testimony creates a genuine issue of material fact with respect to whether plaintiff sustained injury due to his reliance on the alleged misrepresentation.

Alternatively Dean Morris, L.L.P.[2] contends that it is entitled to summary judgment because Mr. Hardy waived or abandoned his state court objections to the foreclosure proceeding by failing

---

[1] Having concluded that plaintiff presented sufficient evidence to raise a genuine issue of material fact concerning Dean Morris, L.L.P.'s intent to deceive, the Court need not address Dean Morris, L.L.P.'s contention that plaintiff's claim fails as a matter of law because a party asserting a claim against his adversary's attorney is limited to claims arising from intentional acts.

[2] The other Dean Morris defendants also urge this defense.

to assert them in an injunction proceeding to arrest the seizure and sale of his property or by filing a suspensive appeal from the order directing the issuance of the writ of seizure and sale. Defendant's position lacks merits. Article 2642 of the Louisiana Code of Civil Procedure provides:

> Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2571 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.

"It is well settled that all defenses and procedural objections to an executory process proceeding are waived if the debtor allows the seizure and sale to proceed uncontested by either a suit for injunction or suspensive appeal." *Plumbing Supply House v. Century National Bank*, 440 So.2d 173, 177 (La. App. 4th Cir. 1983). However, where, as here, the plaintiff's damage claim is not based on defenses and procedural objections to the use of executory process, *Plumbing Supply House v. Century National Bank*, and the other cases cited by defendant[3] are inapposite. *Avery v. Citimortgage, Inc*, 15 So.3d 240 (La.App. 1st Cir. 2009) sets out the proper analysis for evaluating a claim for damages not based on defenses and procedural objections to the issuance of executory process. There, following the adjudication of property via executory process, the mortgagor of property filed suit seeking to annul the judgment or alternatively seeking damages for negligence and unjust enrichment. The plaintiff mortgagor asserted that he had made the proper payments to the mortgagee but that the mortgagee had not properly credited the payments to his account. The mortgagee sought dismissal of the case based on *res judicata* and failure to state a claim. In

---

[3]*First Guaranty Bank v. Baton Rouge Petroleum Center, Inc.*, 529 So.2d 834 (La. 1988); *Antoine v. Chrysler Financial Corp.*, 782 So.2d 651 (La. App. 4th Cir. 2001); *Citizens Bank & Trust Company*, 498 So.2d 217 (La. App. 1st Cir. 1986); *Ford Motor Credit Company v. Herron*, 234 So.2d 517 (La. App. 3rd Cir. 1970).

affirming the trial court's finding of *res judicata*, the appellate court outlined the following law applicable to executory process:

> Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both. La. C.C.P. art. 2642.
>
> The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory process has not been followed. La. C.C.P. article 2751. And as a general rule, in an appeal from an order issuing a writ of seizure and sale via executory process, the sole contention that can be raised is the authenticity of the process itself.

*Id.* at 243. In reversing the trial court's dismissal of the claims for damages, the court opined:

> Although it appears that [plaintiff] did not attempt to arrest the seizure and sale of his residence by injunction under La. C.C.P. art. 2751 or to timely appeal the executory process judgment, this lack of action on his part is of no moment because [plaintiff] is not asserting that the debt was legally unenforceable or that it had been extinguished as required to obtain injunctive relief.
>
> . . .
>
> Moreover, [plaintiff] does not raise any contentions that, at the time of the executory process lawsuit, the debt was legally unenforceable, that the debt had been extinguished, or that the procedure required by law for an executory proceeding had not been followed as required to arrest the seizure and sale of his residence. See La. C.C.P. art. 2751.

Id. at 244. Based on the reasoning applied in *Avery,* a challenge to the quantum of the attorney's fees and costs does not fall within the scope of challenges deemed waived by the mortgagor if not raised within the executory process proceeding itself or in a suspensive appeal. Therefore, defendant's contention that it is entitled to summary judgment based on the defense of waiver fails.

Because Mr. Hardy has presented sufficient evidence to raise a genuine issue of material fact with respect to each element of his claim for intentional misrepresentation, the Court denies Dean Morris L.L.P. summary judgment on that claim.

As to defendants George B. Dean, Jr. and John C. Morris, III, partners in Dean Morris, L.L.P., the Court finds that the evidence creating the genuine issues of material fact on the intentional misrepresentation claim against the firm, also raises genuine issues of material fact on that claim as to the partners. In general, as partners in Dean Morris, L.L.P., Mr. Dean and Mr. Morris are each bound for their virile share of the debts of the partnership. La. C. C. art. 2817; *Hart v. Theus, Grisham, Davis & Leigh, LLP*, 877 So.2d 1157,1161 (La. App. 2nd Cir. 2004). However, the Court takes judicial notice that Dean Morris, L.L.P. is a registered limited liability partnership, and therefore neither Mr. Dean nor Mr. Morris can be held "individually liable for the liabilities and obligations of the partnership arising from . . . intentional misconduct committed in the course of the partnership business by another partner or a representative of the partnership . . .." La. Rev. Stat. 9:3431.

As noted previously, during the deposition of Dean Morris, L.L.P., Mr. Morris testified, in pertinent part, that:

> [O]ur policy has always been to estimate enough to make sure that when we are at risk for the fees and costs that we collect enough to pay all the costs and reserve unto ourselves a reasonable attorney's fee. Our policy has been that all along. Our practices, you know- we've gone through periods of time when we were better at estimating. I mean, in the - I think in the late nineties it was easier because the costs were lower. Something escalated in the early 2000s and we got burned a few times, as I recall, vaguely, and the - the costs would like, come out of nowhere. So, we would add more, you know. We'd kind of deal with it on a - somewhat month-by-month basis, you know. I mean, there might've been hundreds of changes in practices, but our policy was always to estimate enough to make

> sure that we collected enough to pay all the costs that might accrue, plus whatever is left over would be our attorney's fee, and to make sure that that amount was within the terms of the contract with the borrower and was reasonable an [sic] amount.

Doc. 226-1, Ex. 1, p. 144-145. As noted herein above, in considering a motion for summary judgment the Court is obligated to construe all facts and inferences in the light most favorable to the non-moving party. *Bazan ex rel Bazan v. Hildago County*, 246 F.3d at 489. Therefore, for purposes of this motion, the Court infers that the references to "we" and "our" in Mr. Morris's testimony refers to the partnership and further infers that as partners Mr. Dean and Mr. Morris had input concerning the policy and practices adopted by the firm with respect to foreclosure fees and costs. Given those inferences, the Court concludes that Mr. Dean and Mr. Morris are not entitled to summary judgment on this claim and denies their motions for summary judgment on the intentional misrepresentation claim.

There is no evidence that Mr. Heck or Ms. Couteau are partners in Dean Morris, L.L.P. Therefore, they cannot be held liable for the acts of Dean Morris L.L.P. and can be held to be liable only for their own acts in connection with the handling of Mr. Hardy's foreclosure proceedings. Plaintiff has not provided any evidence that either Mr. Heck or Ms. Couteau made any misrepresentation to Mr. Hardy. Given the absence of such evidence, Mr. Heck and Ms. Couteau are entitled to summary judgment on plaintiff's claim for intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d

557, 563 (La. App. 4th Cir. 2009). Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation, the same reasoning used in analyzing the claims of intentional misrepresentation against the various Dean Morris defendants applies in evaluating the claims of fraud against those same defendants. For the reasons stated herein above, the motion for summary judgment on the fraud claim is denied as to Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III and granted as to Charles H. Heck, Jr. and Candace A. Couteau.

## Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property. The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession. But, there must be either a wrongful taking or a wrongful detention." *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957). Dean Morris has submitted evidence establishing that it did not receive any money from Mr. Hardy. Doc. 187-2, ¶ 11. Plaintiff has not submitted any evidence indicating that funds he provided to refinance his loan, or funds provided by the lender who refinanced the loan, were paid to Dean Morris. Nor is there any evidence that even if any such funds were paid to Dean Morris that Dean Morris was not legally entitled to the funds paid. Considering that lack of evidence, Mr. Hardy has failed to raise a genuine issue of material fact concerning whether Dean Morris wrongfully deprived him of any property. Dean Morris is entitled to summary judgment on plaintiff's conversion claim.

## Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st. Cir. 1988).

Dean Morris seeks summary judgment on the unjust enrichment claim urging that because plaintiff has other remedies available, he cannot state a claim for unjust enrichment. Defendant's contention is well founded. Mr. Hardy had other remedies available to him, including claims for intentional misrepresentation and fraud.

That Mr. Hardy has failed to prevail on some of the other remedies available to him and may ultimately fail to prevail on the claims of intentional misrepresentation and fraud, does not negate the fact that such remedies were available to him. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* Similarly,

14

"the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy available at law (subidiarity)." *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989). The availability of alternative remedies bars Mr. Hardy's claim for unjust enrichment. Therefore, the Court grants the summary judgment on plaintiff's claim of unjust enrichment.

### Civil Conspiracy

Article 2324A of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted).

Although Mr. Hardy has raised genuine issues of material fact with respect to his claims for intentional misrepresentation and fraud, that evidence does not preclude summary judgment on the claim for civil conspiracy. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted).  Plaintiff does not offer any specific evidence of an agreement to commit a tort.  In the absence of such evidence Dean Morris is entitled to summary judgment on this claim.

### Breach of Contract

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Bauer v. Dean Morris*, Fourth Supplemental and Amending Petition for Damages, ¶ XIV.  Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Mr. Hardy. Plaintiff claims that he is a third party beneficiary of the contract between Dean Morris and plaintiff's lender which provides for an "allowable" attorney fee of $900.00 for a full foreclosure proceeding in Louisiana.  Plaintiff however submitted no evidence concerning the contract under which he claims to a third party beneficiary and failed to identify the contract relied upon, although presumably it would be the contract between Dean Morris and Homecomings concerning Dean Morris's handling of residential foreclosure actions and activities on behalf of MERS.  Absent evidence of the contract relied upon, plaintiff cannot raise a genuine issue of material fact on his breach of contract claim, and all of the Dean Morris defendants are entitled to summary judgment on the breach of contract claim.  Accordingly,

**IT IS ORDERED** that the motion is GRANTED insofar as it seeks dismissal of all of plaintiff's claims against Charles H. Hecker, Jr. and Candace A. Couteau;

**IT IS FURTHER ORDERED** that the motion is GRANTED insofar as it seeks dismissal of plaintiff's claims for conversion, unjust enrichment, civil conspiracy, and breach of contract against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III;

**IT IS FURTHER ORDERED** that the motion is denied insofar as it seeks dismissal of plaintiff's claims for intentional misrepresentation and fraud against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III.

New Orleans, Louisiana, this 30th day of March, 2011.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE