## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROBERT BAUER, ET AL                                    CIVIL ACTION

VERSUS                                                 NO. 08-5013

DEAN MORRIS, L.L.P., ET AL                             SECTION "K"(2)

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr.,  John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau  (referred to collectively herein after as "Dean Morris") (Doc. 178) seeking to dismiss all claims of plaintiff Marsha Gilmore against Dean Morris.  Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion in part and denies it in part.

BACKGROUND

On April 30, 1976, August Dutton, Jr. and Mercedes LeBlanc Dutton executed a promissory note payable to Delta Mortgage Company for $36,500.00. (Doc. 178, Ex. A, Dutton 1).   The Duttons  secured the promissory note with a mortgage on property located at 3521-23 General Ogden Street, New Orleans, Louisiana. (Doc. 178, Ex. A, Dutton 3.). The note was endorsed in favor of Federal National Mortgage Association and was ultimately assigned to Chase Manhattan Mortgage Corporation, now known as Chase Home Finance, L.L.C. ("Chase").  (Id.).

Mr. Dutton died in 1992, and Mrs. Dutton died in 1997. (Doc. 178, Ex. D- Depo. of Marsha Gilmore, p. 19). After her parents died,  Marsha Gilmore began paying the note on the loan.  In early 2001 Mrs. Gilmore fell behind on the monthly payments.  In May 2001Chase retained Dean Morris,

LLP to represent it in a foreclosure proceeding on the Dutton property. On May 11, 2001, Dean

Morris filed a "Petition for Executory Process" in the Civil District Court for the Parish of Orleans,

against August Dutton, Jr. and Mercedes LeBlanc Dutton,  seeking, among other things, a writ of

seizure and sale to sell the mortgaged property.  (Doc. 178, Ex. D, Chase Exhibit 2).   In connection

with the filing of that suit, Dean Morris paid the Clerk of Court $247.50 for costs  and deposited

$1,000.000 with the Orleans Parish Civil Sheriff. (Doc. 178, Ex. A, Dutton 6 and 7).  On May 14,

2001, the state judge ordered that a writ of seizure and sale issue for the property.  (Doc. 178, Ex.

A, Dutton 5).   On May 15, 2001, Marsha Gilmore was recognized as the heir of August Dutton, Jr

and Mercedes LeBlanc Dutton and was placed in possession of their property including the General

Ogden Street property.  (Doc. 178, Ex. D, Chase Ex. 5).

      In late May 2001, Marsha Gilmore retained  Youth Enrichment Network, Inc. ("YENI") to

assist her  with respect to the foreclosure on the General Ogden Street property; Mrs. Gilmore

authorized the release of all information concerning the "mortgage history, payoff, arrearages, and

a break down of all fees" to YENI.  (Doc. 178, Ex. A, Dutton Ex. 8).  At YENI's request, Dean

Morris sent an "Estimated Payoff Quote" dated June 22, 2001, valid through June 30, 2001,  to

YENI  reflecting the following amounts:

| | |
|---|---:|
| Principal Balance | 13,196.93 |
| Interest | 787.21 |
| Late Fees | 48.51 |
| Escrow Due | 578.99 |
| Property Inspection | 82.00 |
| Prior Legal | 125.00 |
| Corporate Advance | 125.00 |
| Attorney Fees | 650.00 |
| Abstract/Title Exam | 300.00 |
| *Clerk | 347.50 |
| *Sheriff | 2,500.00 |

|                         |           |
|-------------------------|-----------|
| *Sheriff Commission     | 448.31    |
| *Total                  | 19,189.45 |
| * estimates             |           |

(Doc. 178, Ex. A, Dutton Ex. 9).  The proposal also states "THIS IS NOT A CONTRACT AND

IS SUBJECT TO VERIFICATION."  (Id.).  Several days later, Dean Morris sent YENI an

"Estimated Reinstatement Quote" dated June 28, 2001, good through July 15, 2001,  stating the

following amounts:

|                      |          |
|----------------------|----------|
| Payments Due         | 3,377.44 |
| Late Fees            | 64.68    |
| Corporate Advance    | 250.00   |
| Property Inspections | 91.00    |
| Attorney Fees        | 750.00   |
| Abstract/Title Exam  | 300.00   |
| *Clerk               | 347.50   |
| *Sheriff             | 1,114.00 |
| *Sheriff Commission  | 113.49   |
| *Total               | 6,408.11 |
| * estimates          |          |

(Doc. 178, Ex. A, Dutton Ex. 10).  That proposal contains the same verification language quoted

herein above.  On July 10, 2001 Dean Morris sent YENI another "Estimated Payoff Quote," good

through July 31, 2001, indicating the following sums:

|                     |           |
|---------------------|-----------|
| Principal Balance   | 13,196.93 |
| Interest            | 889.44    |
| Corporate Advance   | 250.00    |
| Late Fees           | 80.85     |
| Escrow Due          | 578.99    |
| Property Inspection | 115.17    |
| Attorney Fees       | 750.00    |
| Abstract/Title Exam | 300.00    |
| *Clerk              | 347.50    |
| *Sheriff            | 2,500.00  |
| *Sheriff Commission | 453.34    |
| *Total              | 19,462.22 |
| * estimates         |           |

3

(Doc. 178, Ex. A. Dutton Ex. 11).  The proposal also included the previously quoted verification language.  Several weeks later on August 3, 2001, Dean Morris sent YENI an "Estimated Payoff Quote," valid through August 15, 2001 stating:

| | |
|---|---|
| Principal Balance | 13,196.93 |
| Interests | 939.60 |
| Escrow Due | 578.99 |
| Late Charges | 80.85 |
| Property Inspections | 116.00 |
| Corporate Advance | 674.00 |
| Attorney Fees | 750.00 |
| Abstract/Title Exam | 300.00 |
| *Clerk | 347.50 |
| *Sheriff | 2,500.00 |
| *Sheriff Commission | 473.51 |
| *Total | 19,957.38 |
| * estimates | |

(Doc. 178, Ex. A, Dutton Ex. 13).  That proposal also stated that it was "SUBJECT TO VERIFICATION."

To prevent foreclosure on the property, Mrs. Gilmore initiated steps to refinance her debt. On August 15, 2001 Vintage Title, LLC ("Vintage") requested a payoff statement for the Dutton/Gilmore loan from Dean Morris.  (Doc. 178, Ex. A, Dutton Ex. 15).  Mrs. Gilmore refinanced the property in late August; included in the new loan was an amount to reroof the mortgaged property. (Doc. 178, Ex. D, Chase Ex. 9).    On August 24, 2001, Vintage sent Dean Morris payoff funds totaling $20,213.35.[1] (Doc. 178, Ex. A, Dutton Ex.17). That same day, apparently in response to the August 15, 2001 request from Vintage,  Dean Morris sent Vintage an "Estimated Payoff quote"  good through August 31, 2001 reflecting the following amounts:

_____

[1] No explanation is given as to why the payoff amount sent by Vintage exceeded the payoff figures provided on August 3, 2001.

4

| | |
|---|---:|
| Principal Balance | 13,196.93 |
| Interests | 1,077.63 |
| Escrow Due | 561.17 |
| Late Charges | 113.19 |
| Property Inspections | 116.00 |
| BPO | 300.00 |
| Corporate Advance | 575.00 |
| Attorney Fees | 750.00 |
| Abstract | 400.28 |
| Clerk | 484.50 |
| Sheriff | 997.82 |
| Sheriff Commission | 472,28 |
| Total | 19,034.80 |

(Doc. 178, Ex. A, Dutton Ex. 15 and 16).  Dean Morris forwarded all of the payoff funds to Chase on August 31, 2001.

Thereafter, on September 18, 2001, on the motion of Chase, the state judge dismissed the foreclosure proceeding. (Doc. 178, Ex. A, Dutton Ex. 19).  Approximately a month later on October 17, 2001, Chase refunded to plaintiff $4,835.58.  (Doc. 178, Ex. C, Affidavit of William L. Becker, ¶13, Dutton 7).  The refund represented the surplus after Chase allocated the payoff funds as follows:

| | |
|---|---:|
| Principal | $13,196.93 |
| Interest | $ 1,028.82 |
| Escrow | $   561.17 |
| Late Charges | $     97.02 |
| Foreclosure Fees and Costs | $   691.00 |
| Total | $15,574.94 |

(Doc. 178, Ex. C, Affidavit of William L. Becker,  ¶12).

On February 17, 2005, a number of individuals, including "Mercedes Dutton" filed a putative class action suit in the Civil District Court for the Parish of Orleans against Dean Morris and various lender defendants alleging a variety of claims.  After filing suit, plaintiffs' counsel filed an ex parte motion to substitute Marsha Gilmore for Mercedes Dutton; the state district judge

5

granted the motion.  Following two  unsuccessful attempts to remove the case to federal court, a defendant  successfully  removed the suit in 2008.  The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class."  Fourth Supplemental and Amending Petition for Damages,  ¶ IX.  The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of  all of the  Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . .  for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class  *Id,* at ¶ X, ¶ XI.  Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations."  *Id.* at ¶ XIV.  The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris.  Dean Morris now seeks summary judgment on all of Mrs. Gilmore's  remaining claims.

## Summary Judgment Standard

6

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific

7

evidence in the record and to articulate precisely how this evidence
supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F. 3d 851,857 (5th Cir. 2010).

Judicial Estoppel

Before addressing Dean Morris's motion with respect to plaintiff's individual claims, it is

necessary to analyze Dean Morris's contention that plaintiff's claims are barred by judicial estoppel

because plaintiff failed to identify the claims in this suit as assets in the bankruptcy petition she filed

in 2009.   The doctrine of judicial estoppel bars a party from assuming inconsistent positions in

litigation.  *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).   Judicial estoppel is

designed "to protect the integrity of the judicial process,  by prevent[ing ] parties from playing fast

and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d

197, 205 (5th Cir. 1999)(internal quotations and citation omitted).  Judicial estoppel applies when

(1) a party's position is clearly inconsistent with a previous position; (2) the court accepted the

previous position; and (3) the non-disclosure was not inadvertent.  *Kane v. National Union Fire*

*Insurance Co.*, 535 F.3d 380, 385-386 (5th Cir. 2008).   With respect to judicial estoppel,

"inadvertence requires either that the debtor lacks knowledge of the undisclosed claim *or* has no

motive for its concealment.  Id. at 386 (internal quotation and citation omitted)..

The following additional facts are necessary to analyze  Dean Morris, L.L.P.'s judicial

estoppel contention.   On September 30, 2009**,** more than four years after Mrs. Gilmore filed this

suit, and long after she had been deposed in this suit, she filed a voluntary petition for a Chapter 11

bankruptcy.  In the schedules filed in connection with that bankruptcy petition, Mrs. Gilmore did

not disclose this suit as a contingent  asset. On May 7, 2010, Mrs. Gilmore filed her Sixth Amended

Chapter 11 plan which did not provide for any payments to unsecured creditors.  On June 4, 2010,

8

the bankruptcy judge confirmed that plan, and ordered, among other things, that "Debtor will pay 0% to unsecured creditors according to her Sixth Amended Chapter 13 Plan."  Doc. 178, Ex. L.

Debtors in bankruptcy have a "continuing duty to disclose all pending claims and potential claims."  *Kane v. National Union Fire Insurance Company*, 535 F.3d at 384-385, citing 11 U.S.C. § 521(1).  Mrs. Gilmore's failure to disclose this suit as a contingent asset in her bankruptcy schedules is clearly inconsistent with her duty to disclose all pending claims.  At the time Mrs. Gilmore filed her bankruptcy petition, this suit had been pending for several years and had been actively litigated.  That inconsistency satisfies the first prong of the test for judicial estoppel.  The second prong is also satisfied.  The bankruptcy judge confirmed plaintiff's Chapter 11 plan on June 4, 2010 and ordered that nothing would be paid to unsecured creditors.   Implicit in the order that unsecured creditors would be paid nothing is the bankruptcy judge's acceptance of plaintiffs' representations in the bankruptcy schedules.   Thus, it is clear that the bankruptcy judge accepted plaintiff's representation in her bankruptcy schedules that she had no contingent assets.

 The final requirement for judicial estoppel is that the non-disclosure must not have been inadvertent.  Plaintiff  does not offer any reason for failing to list the then pending suit in her bankruptcy schedules; she  simply state that the failure to do so was inadvertent and that there was "no concealment with an attempt to take unfair advantage."  (Doc. 228, p. 22).

A "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general the debtor lacks knowledge of the undisclosed claim *or* has no motive for its concealment."  *Coastal Plains*, 179 F.3d at 210.  Plaintiff filed this suit prior to initiating her  bankruptcy proceedings. She  clearly had knowledge of the claims, had retained counsel to represent her on the claims, and had been actively litigating the matter for several years at the time the she filed the

bankruptcy proceeding.   Additionally, plaintiff had  a motive to fail to disclose the claims:  if plaintiff recovered on the pending claim without having disclosed it to her  creditors, she  would have received a windfall. Plaintiff has not come forth with any facts which raise a genuine issue of material fact  on the issue of judicial estoppel insofar as it applies to her pursuit of the claims in this suit. Judicial estoppel therefore precludes plaintiff from personally pursuing these claims.  As will be addressed herein after, that conclusion does not mandate at this time the dismissal of the suit.

Additionally, the Court concludes that plaintiff does not have standing to pursue these claims.  During a Chapter 11 proceeding, a debtor-in-possession, has "most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate."  *In Re United Operations, LLC*, 540 F.3d 351, 355 (5th Cir. 2008), citing 11 U.S.C. §1107(a).  However, once the plan is confirmed, the estate ceases to exist and the debtor loses its status as a "debtor-in possession" which in turn results in the debtor's authority to pursue claims, as though she were a trustee,  also expiring. Id.  "'After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan.'"  Id., quoting *In Re Paramount Plastics, Inc.*, 172 B.R. 331, 333 (Bankr. W.D. Wash. 1994).  "For a debtor to preserve a claim, 'the plan must expressly retain the right to pursue such actions.'" *Id.*  Mrs. Gilmore's Sixth Amended Plan  contains no express retention of her  right to purse these claims. Thus, plaintiff lacks standing to pursue the claim in this suit.

Mrs. Gilmore's claim in this suit were a contingent  asset of her bankruptcy estate when she filed her Chapter 11 petition.  *Kane v. National Union Fire Insurance Company*, 535 F.3d at 387. After the bankruptcy judge confirmed her Chapter 11 plan, the Trustee became the real party in interest in this suit.  Id.  Because Mrs. Gilmore failed to disclose this pending suit in her bankruptcy

schedules, the Trustee never had the opportunity to review the suit to determine whether to pursue

the suit or abandon it.   Therefore, the Court will grant the Trustee 60 days to determine whether to

move to substitute himself in place of Mrs. Gilbert as the plaintiff in this matter.  If the bankruptcy

trustee declines to move forward with this suit, then all of Mrs. Gilmore's claims shall be dismissed

with prejudice.  Despite the absence of the proper party plaintiff, in the interest of judicial economy,

the Court will nonetheless address Dean Morris's motion with respect to Mrs. Gilmore's individual

claims.

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims,  Louisiana

substantive  law  applies  in  analyzing  the  claims.    Plaintiff  asserts  a  claim  for  intentional

misrepresentation against Dean Morris based on her allegation  that the Estimated Payoff Quotes

and the Estimated Reinstatement Quote issued by Dean Morris included inflated foreclosure costs.

To  establish  a  claim  for  intentional  misrepresentation  a  plaintiff  must  prove:  "(1)  a

misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable

reliance with resulting injury."  *Systems Engineering and Security, Inc.  v. Science & Engineering

Associations, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation

omitted).   In analyzing whether the various Dean Morris defendants are entitled to summary

judgment on this claim, the Court will separately address the claims against Dean Morris, L.L.P.,

the claims against the partners, George B. Dean, Jr. and John C. Morris, III, and the claims against

the non-partner lawyers, Charles H. Heck, Jr. and Candace A. Coutreau.

To  support  her  contention  that  the  reinstatement  and  payoff  proposals  include

11

misrepresentations, plaintiff offered evidence establishing that in 2001 the filing fee in the Civil

District Court for the Parish of Orleans for a civil petition  with five or fewer defendants was

$247.50. (Doc. 228, Ex. 2).  It is undisputed that in connection with filing the petition for executory

process Dean Morris, L.L.P.  paid a filing fee of $247.50.  However, all of the reinstatement and

payoff proposals  included a representation that the "Clerk" fee was $347.50.  Dean Morris, L.L.P.

has not offered any evidence to establish that the actual Clerk of Court's  fee exceeded $247.50 at

the time it sent  each payoff or reinstatement proposal.  Plaintiff  also offered evidence establishing

that the Sheriff's fees actually incurred  by  the dates on which Dean Morris, L.L.P.  sent either a

reinstatement proposal or a payoff proposal never equaled the amounts represented by Dean Morris,

L.L.P.  as Sheriff's fees.  In the reinstatement proposal issued June 28, 2001, Dean Morris, L.L.P.

included a Sheriff fee of $1,114.00 when in fact, the actual fee incurred by that date was only

$114.00.  (Doc. 228, Ex. 3).  Plaintiff also offered evidence that the Sheriff's fees were not

$2,500.00 on any of the dates that the payoff proposals were sent, but rather were as follows: 1) June

22, 2001- $75.00, 2) July 10, 2001 - $513.38; and 3) August 3, 2001 - $773.35.[2]  (Doc. 228, Ex. 3).

Moreover, plaintiff submitted evidence showing that contrary to the representations in the

reinstatement quote and the payoff quotes, the Civil Sheriff had charged no commission at the time

those quotes were sent.  (Id.).  The cost sheet from the Civil Sheriff shows that a commission of

$22.50 was charged on August 18, 2001; however, that amount is substantially less than Dean

Morris, L.L.P.'s lowest estimate of $113.49 as a sheriff's commission.  (Doc. 228, Ex. 3).

Considering the evidence submitted by plaintiff, the Court concludes that there is a genuine issue

---

[2] The Court need not address Dean Morris, L.L.P.'s representations in the August 24, 2001 "Estimated Payoff quote" because at the time that Dean Morris, L.L.P. issued that quote, plaintiff had completed the refinancing of her loan and could not have relied on that quote.

12

of material fact concerning whether Dean Morris, L.L.P. misrepresented the various fees and costs in connection with Mrs. Gilmore's foreclosure.

The Court further concludes that there is a genuine issue of material fact concerning whether Dean Morris, L.L.P. had an intent to deceive. In the corporate deposition of Dean Morris, L.L.P., Mr. Morris testified, in pertinent part, that:

> [O]ur overall policy really hasn't changed, because our policy has always been to estimate enough to make sure that when we are at risk for the fees and costs that we collect enough to pay all the costs and reserve unto ourselves a reasonable attorney's fee. Our policy has been that all along. Our practices, you know- we've gone through periods of time when we were better at estimating. I mean, in the - I think in the late nineties it was easier because the costs were lower. Something escalated in the early 2000s and we got burned a few times, as I recall, vaguely, and the - the costs would like, come out of nowhere. So, we would add more, you know. We'd kind of deal with it on a - somewhat month-by-month basis, you know. I mean, there might've been hundreds of changes in practices, but our policy was always to estimate enough to make sure that we collected enough to pay all the costs that might accrue, plus whatever is left over would be our attorney's fee, and to make sure that that amount was within the terms of the contract with the borrower and was reasonable an [sic] amount.

Doc. 226-1, Ex. 1, p. 144-145. Admittedly the issue as to whether the plaintiff has produced sufficient evidence of intent to deceive is close. However, viewing the evidence in the light most favorable to Mrs. Gilmore and with all factual inferences drawn in her favor as required, the Court concludes that this testimony is sufficient to present a genuine issue of material fact concerning Dean Morris L.L.P.'s intent to deceive plaintiffs, including Ms. Gilmore, as to the costs incurred in foreclosure proceedings.[3]

---

[3] Having concluded that plaintiff presented sufficient evidence to raise a genuine issue of material fact concerning Dean Morris, L.L.P.'s intent to deceive, the Court need not address Dean Morris, L.L.P.'s contention that plaintiff's claim fails as a matter of law because a party

The Court further concludes that a genuine issue of material fact exists with respect to Mrs. Gilmore's justifiable reliance on the alleged misrepresentations with resulting injury. Mrs. Gilmore testified that she felt forced to refinance her loan in order to avoid foreclosure. (Doc. 228, Ex. 10, Depo. of Marsha Gilmore, p. 87, 95). That testimony establishes a genuine issue of material fact concerning Mrs. Gilmore's reliance on the alleged misrepresentations of fact.

Dean Morris asserts Mrs. Gilmore sustained no damages because she received a refund of $4,835.58 from Chase. That refund however, does not negate the fact that Mrs. Gilmore borrowed money to pay the costs as represented and paid interest in connection with borrowing the money to pay the costs as represented. Thus, she was not made whole by the refund because she had to pay interest on the funds borrowed and for several months lost the use of the funds which were refunded to her. The Court acknowledges that the economic damages appear to be *de minimus*. However,

> [t]he common law doctrine of "de minimus non curat lex" is not embodied in the corpus of the law of [Louisiana]; on the contrary, there exist these definite, positive provisions that "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it. . . .." Art. 2315, R.C.C. and "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." Art. 2316, R.C.C. "All courts shall be open, and every person for injury done to him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay." Art.1, Sec. 6, Const. 1921. Consequently, plaintiff is entitled to an award, even though nominal, if warranted by the evidence.

*Sonnier v. United States Casualty Company*, 165 So.2d 3, 4 (La. 1964). Mrs. Gilmore has established a genuine issue of material fact with respect to whether she sustained injury due to her

---

asserting a claim against his adversary's attorney is limited to claims arising from intentional acts.

reliance on the alleged misrepresentations.

Additionally, Plaintiff asserts that she sustained emotional damages due to the alleged misrepresentations. Mrs. Gilmore has not cited any authority addressing the standard for awarding emotional damages for intentional misrepresentation, nor has the Court located any such authority. In the absence of such authority, the Court concludes that a claim for emotional damages for an intentional misrepresentation is analogous to a claim for damages from a negligent or an intentional infliction of emotional distress, and that the same test should apply in determining whether a plaintiff is entitled to recover such damages.

Louisiana tort principles permit recovery for damages for negligent or intentional infliction of emotional distress unaccompanied by physical injury "only in special circumstances which serve to guarantee against spurious claims. Accordingly, we have held that only one who by extreme and outrageous conduct intentionally or negligently causes severe emotional distress to another is subject to liability for such damages. Minimal and normal inconvenience is not compensable." *Arco Oil & Gas Company v. DeShazer*, 728 So.2d 841, 844 (La. 2009); citing *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991). Plaintiff has not submitted any evidence that she sustained a physical injury. Moreover, Mrs. Gilmore has not presented sufficient evidence to raise a genuine issue of material fact concerning whether she sustained "severe emotional distress." At her deposition Mrs. Gilmore testified that absent the misrepresentations "I wouldn't have had to go through - - Good words -- the thought of losing my mother's property, you know." (Doc. 178, Ex. D - Depo. of Marsha Gilmore, p. 91). That testimony is insufficient to raise a genuine issue of material fact under the stringent test of *Arco.* Thus, Dean Morris, L.L.P. is entitled to summary judgment on plaintiff's claims for emotional damages.

Dean Morris, L.L.P. urges that it is entitled to summary judgment because Mrs. Gilmore's claims are barred by prescription.  This contention lacks merit.  "Delictual actions are subject to a liberative prescription of one year."  La. Civ. Code art. 3492.  "To determine whether a claim is prescribed, a court looks to the time when a plaintiff *knew or should have known* that a cause of action arose or existed and prescription statutes are strictly construed against prescription and in favor of the claim that is said to be extinguished."  *Gonzalez v. Gonzalez,* 20 So.3d 557, 562 (La. App. 4th Cir. 2009).  "Prescription does not run again one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable."  *Griffin v. Kinberger*, 507 So.2d 821, 823 (La. 1987).

Dean Morris, L.L.P. contends that Mrs. Gilmore's receipt of the refund from Chase in October 2001 would have "arouse[d] the interest of a reasonable person."  (Doc. 178-1, p. 15).  Receipt of the refund however is not determinative.  No evidence has been submitted establishing that Chase provided contemporaneous with the refund an explanation of what the refund represented.  Additionally, Mrs. Gilmore testified that she had no knowledge of the alleged overcharges until Gwen Dixon Jackson, who was affiliated with YENI, told her about the alleged overcharges in the summer of 2004, less than one year before Mrs. Gilmore filed suit in February 2005.  (Doc. 228, Ex. 10, Depo. of Marsha Gilmore, p. 13-14.).  Construing the evidence in the light most favorable to plaintiff, the Court concludes that there is a genuine issue of material fact concerning when Mrs. Gilmore knew or should have known of the alleged overcharges.  Therefore, Dean Morris, L.L.P. is not entitled to summary judgment on Mrs. Gilmore's tort claims based on prescription.

Dean Morris, L.L.P. further contends that Mrs. Gilmore's claims are barred by the doctrine

of voluntary payment.  The Court disagrees.  It is well established that "money voluntarily paid with knowledge of the facts cannot be recovered back."  *Ken Lawler Builders v. Delaney*, 892 So.2d 778. 780 (La. App. 2nd Cir. 2005).  The voluntary payment doctrine "exists because of 'the stabilizing legal principle preventing  payors from disturbing the status quo by demanding reimbursement subsequently of payments made by them voluntarily *with full knowledge* of [the] facts.'"  *Sanders v. Washington Mutual Home Loans, Inc.*, 248 Fed. Appx. 513, 515 (5th Cir. 2007), quoting *Whitehall Oil Co. v. Boagni*, 229 So.2d 702, 705 (1969) (emphasis added).  Dean Morris, L.L.C. urges that *Sanders v. Washington Mutual Home Loans, Inc.,* supports the application of the voluntary payment doctrine in this case.  *Sanders* however can be readily distinguished.  Unlike here, in *Sanders* there was no allegation that the challenged fee "was excessive, unwarranted, or unjustified."  *Sanders v. Washington Mutual Home Loans, Inc.*,  248 Fed. Appx. at 517.  Thus, where, as here, there is a genuine issue of material fact concerning the accuracy of the amounts paid, the doctrine is inapplicable.  If there were in fact misrepresentations about the fees and costs, then the voluntary payment could not have been made with full knowledge of the facts.  It is the alleged misrepresentations that distinguish Mrs. Gilmore's case from *Sanders* and render the voluntary payment doctrine inapposite.

As to defendants George B. Dean, Jr. and John C. Morris, III, partners in Dean Morris, L.L.P., the Court finds that the evidence creating the genuine issues of material fact on the intentional misrepresentation claim against the firm, also raises  genuine issues of material fact on that claim as to the partners.  In general, as partners in Dean Morris, L.L.P., Mr. Dean and Mr. Morris are each bound for their virile share of the debts of the partnership.  La. C. C. art. 2817; *Hart v. Theus, Grisham, Davis & Leigh, LLP*, 877 So.2d 1157,1161 (La. App. 2nd Cir. 2004).  However,

the Court takes judicial notice that Dean Morris, L.L.P. is a registered limited liability partnership, and therefore neither Mr. Dean nor Mr. Morris can be held "individually liable for the liabilities and obligations of the partnership arising from . . . intentional misconduct committed in the course of the partnership business by another partner or a representative of the partnership . . .." La. Rev. Stat. 9:3431.

As noted previously, during the deposition of Dean Morris, L.L.P., Mr. Morris testified, in pertinent part, that:

> [O]ur policy has  always been to estimate enough to make sure that when we are at risk for the fees and costs that we collect enough to pay all the costs and reserve unto ourselves a reasonable attorney's fee. Our policy has been that all along.  Our practices, you know- we've gone through periods of time when we were better at estimating.  I mean, in the - I think in the late nineties it was easier because the costs were lower.  Something escalated in the early 2000s and we got burned a few times, as I recall, vaguely, and the - the costs would like, come out of nowhere.  So, we would add more, you know.  We'd kind of deal with it on a - somewhat month-by-month basis, you know.  I mean, there might've been hundreds of changes in practices, but our policy was always to estimate enough to make sure that we collected enough to pay all the costs that might accrue, plus whatever is left over would be our attorney's fee, and to make sure that that amount was within the terms of the contract with the borrower and was  reasonable an [sic] amount.

Doc. 226-1, Ex. 1, p. 144-145.  As noted herein above, in considering a motion for summary judgment the Court is obligated to construe  all facts and inferences in the light most favorable to the non-moving party. *Bazan ex rel Bazan v. Hildago County*, 246 F.3d at 489.  Therefore, for purposes of this motion, the Court infers that the references to "we" and "our" in Mr. Morris's testimony refers to the partnership and further infers that as partners Mr. Dean and Mr. Morris had input concerning the policy and practices adopted by the firm with respect to foreclosure fees and costs. Given those inferences, the Court concludes that Mr. Dean and Mr. Morris are not entitled to

18

summary judgment on this claim and denies their motions for summary judgment on the intentional misrepresentation claim.

There is no evidence that Mr. Heck or Ms. Couteau are partners in Dean Morris, L.L.P. Therefore, they cannot be held liable for the acts of Dean Morris L.L.P. and can be held to be liable only for their own acts in connection with the handling of Mrs. Gilmore's foreclosure proceedings. Plaintiff has not provided any evidence that either Mr. Heck or Ms. Couteau made any misrepresentation to Mrs. Gilmore. Given the absence of such evidence, Mr. Heck and Ms. Couteau are entitled to summary judgment on plaintiff's claim of intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d at 563. Because the elements of fraud are virtually identical to those necessary to establish a claim of intentional misrepresentation, the same reasoning used in analyzing the claims of intentional misrepresentation against the various Dean Morris defendants applies in evaluating the claims of fraud against those same defendants. For the reasons stated herein above, the motion for summary judgment on the fraud claim is denied as to Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III and granted as to Charles H. Heck, Jr. and Candace A. Couteau.

Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property. The fault may be either the original wrongful acquisition or the subsequent wrongful

19

detention of possession. But, there must be either a wrongful taking or a wrongful detention. " *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957). Plaintiff has provided evidence that she provided Dean Morris, L.L.P. with payoff funds for her loan. That payment, coupled with the genuine issue of material fact concerning whether Dean Morris, L.L.C. misrepresented the costs and fees associated with the foreclosure proceeding, raise a genuine issue of material fact concerning whether Dean Morris, L.L.P. wrongfully deprived her of any property. Nor has plaintiff submitted any competent summary judgment evidence indicating that Dean Morris wrongfully detained any of plaintiff's property. Therefore, summary judgment dismissing this claim as to Dean Morris, L.L.P. is appropriate. For the same reasons stated above, the motion for summary judgment by George B. Dean, Jr. and John C. Morris, III is denied. Because there is no evidence that Charles H. Heck, Jr. or Candace A. Couteau made any misrepresentations to Mrs. Gilmore, the Court grants their motion for summary judgment on the conversion claim.

Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy

20

is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).

Dean Morris moves for summary judgment on this claim urging that because plaintiff has other remedies available to her, she cannot state a claim for unjust enrichment. Defendant's contention is well founded. Other remedies are, in fact, available to plaintiff, e.g., intentional misrepresentation. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* Similarly, "the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy available at law (subidiarity)." *Morphy, Makofsky, & Masson, inc. v. Canal Place 2000*, 538 So.2d 569, 572 (La. 1989). That Ms. Boyd failed to prevail on the other remedies available to her does not negate the fact that such remedies were available. The availability of an alternative remedy bars Ms. Boyd's claim for unjust enrichment and entitles Dean Morris to summary judgment on plaintiff's claim of unjust enrichment.

Civil Conspiracy

Article 2324A of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." However, it is well recognized that Article 2324 does not itself

21

"impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted).

As noted herein above, plaintiff has failed to establish a genuine issue of material fact with respect to any tort claim against Charles H. Heck, Jr. or Candace A. Couteau. Because Mr. Heck and Ms. Couteau are entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort for plaintiff's civil conspiracy claim. Therefore, Charles H. Heck, Jr. and Candace A. Couteau are entitled to summary judgment on plaintiff's civil conspiracy claim.

As for the civil conspiracy claims against Dean Morris, L.L.P., George B. Dean, Jr. and John C. Morris, III, although Mrs. Gilmore has raised genuine issues of material fact with respect to her claims for intentional misrepresentation, fraud, and conversion, against those defendants, that evidence does not preclude summary judgment on the claim for civil conspiracy. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence of an agreement to commit a tort. In the absence of such evidence Dean Morris, L.L.C., George B. Dean, Jr. and John C. Morris, III, are entitled to summary judgment on this claim.

<u>Breach of Contract</u>

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Bauer v. Dean Morris*, Fourth Supplemental and Amending Petition for Damages, ¶ XIV.   Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Mrs. Gilmore. Plaintiff claims that she is a third party beneficiary of the contract between Dean Morris and Chase which she alleges provides for a maximum "allowable" attorney fee of $900.00 for handling a full foreclosure proceeding on a federally insured mortgage.   The parties agree that the relevant mortgage was a federally insured mortgage.

Under Louisiana law, "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary."  La. Civ. Code art. 1978.  Because the Civil Code does not specify the analytical framework for determining when a contract contains a stipulation *pour autrui*, the requisite criteria have been jurisprudentially developed.  *Williams v. Certain Underwriters at Lloyd's of London*, 2010 WL 4009818, *2 (5th Cir. October 13, 2010).  Here, no analysis of the individual criteria is required.  Even assuming *arguendo* that the contract between Chase and Dean Morris includes a stipulation *pour autrui* in favor of Mrs. Gilmore, she has not offered any evidence establishing that Dean Morris received a fee in excess of the alleged "allowable" attorney fee permitted under the contract. Moreover, none of the reinstatement or payoff proposals reflect attorneys fees in excess of $900.00.  That lack of evidence dooms plaintiff's breach of contract claim even assuming plaintiff is a third party beneficiary of the contract between Chase and Dean

Morris, and entitles each of the Dean Morris defendants to summary judgment on plaintiff's claim for Dean Morris's breach of its contract with Chase. Therefore, the Court grants all of the Dean Morris defendants' motion for summary judgment and dismisses plaintiff's breach of contract claims. Accordingly,

**IT IS ORDERED** that the Bankruptcy Trustee shall notify the Court within sixty (60) days of the entry of this order whether he intends to pursue or abandon this suit;

**IT IS ORDERED** that the motion is GRANTED insofar as it seeks dismissal of all of plaintiff's claims against Charles H. Hecker, Jr. and Candace A. Couteau;

**IT IS FURTHER ORDERED** that the motion is GRANTED insofar as it seeks dismissal of plaintiff's claims for unjust enrichment, civil conspiracy, and breach of contract against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III;

**IT IS FURTHER ORDERED** that the motion is denied insofar as it seeks dismissal of plaintiff's claims for intentional misrepresentation, fraud, and conversion against defendants Dean Morris, L.L.P., George B. Dean, Jr., and John C. Morris, III.

New Orleans, Louisiana, this 30th day of March, 2011.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE