UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT BAUER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-5013** |
| **DEAN MORRIS, L.L.P., ET AL** | **SECTION "K"(2)** |

### ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendants Dean Morris, LLP, George B. Dean, Jr., John C. Morris, III, Charles H. Heck, Jr., and Candace A. Coutreau (referred to collectively herein after as "Dean Morris") (Doc. 160) seeking to dismiss all claims of plaintiff Roslyn Valeary Dodge against Dean Morris. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

BACKGROUND

On April 3, 2001, Roslyn Valeary Dodge executed a promissory note payable to Sebring Capital Corporation for $107,000.00. (Doc. 160-4, Ex. 1). Ms. Dodge secured the promissory note with a mortgage on property located at 7425 Ligustrum Drive, New Orleans, Louisiana. (Doc. 160-4, Ex. 2). At some point, the loan became part of a trust entitled "Home Equity Mortgage Asset - Backed-Pass-Through Certificates, Series-2001-KSI." Bank One, N.A. serves as the trustee for the trust. (Doc. 190-15, Ex. 2). At all times pertinent herein, Homecomings Financial ("Homecomings") serviced Ms. Dodge's loan. (Doc. 160-4, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶ 4).

Beginning in late 2001, Ms. Dodge failed to make her monthly payment on the note and mortgage. On January 22, 2002, Dean Morris filed, on behalf of Bank One, a "Petition for

Executory Process" in the Civil District Court for the Parish of Orleans, seeking, among other things, a writ of seizure and sale to sell the mortgaged property. (Doc. 160-4, Ex. 3). At the time Dean Morris filed suit it advanced $248.00 for costs to the Clerk of Court and deposited $1,200.00 with the Orleans Parish Civil Sheriff. (Doc. 160-4, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶7n, Ex. 4, Ex. 5). On January 10, 2002, Homecomings agreed to a Repayment Agreement for $6,088.27, which included $1,200.00 for "Attorney's Fees." (Doc. 190-3, Ex. 9). Ms. Dodge agreed to the plan. (Doc. 190-2, Ex. 5, Answer to Interrogatory No. 8). On January 22, 2003, Homecomings directed Dean Morris to place the foreclosure on hold. (Doc. 160-4, Affidavit of George B. Dean, Jr. and John C. Morris, III, ¶8). Ms. Dodge paid nothing to Dean Morris. (Id.) Subsequently, Dean Morris billed Homecomings $2,025.09. (Id. at ¶10). Homecomings paid Dean Morris $1,200.00 which was less than the costs advanced by Dean Morris. (Id.). Homecomings did not provide Dean Morris with an accounting of the services or fees included in the $1,200.00 payment.

By January 2003, Ms. Dodge had again failed to make several monthly payments on her loan. On January 30, 2003, Ms. Dodge contacted Dean Morris and requested a reinstatement amount and a payoff amount. (Id. at ¶13 mm). On February 10, 2003, Dean Morris provided Ms. Dodge with a Reinstatement Proposal reflecting the following amounts:

| | |
|---|---|
| Payments Due | 4,534.08 |
| Late Fees | 623.48 |
| Corporate Advance | 56.97 |
| Suspense Balance | -1,099.45 |
| NSF | 50.00 |
| Outstanding Prior Legal | 825.09 |
| *Sheriff Commission | 124.95 |
| *Total | 5,115.12 |
| *Estimates | |

(Doc. 160-4, Ex. 6).   That same day, Dean Morris provided Ms. Dodge with an "Estimated Payoff Quote" which stated the following amounts:

| | |
|---|---:|
| Principal Balance | 101,902.36 |
| Interests | 3,422.26 |
| Prepayment Penalty | 4,076.09 |
| Escrow Due | 494.47 |
| Late Charges | 628.43 |
| Suspense Balance | -1,099.45 |
| NSF Fee | 50.00 |
| Corporate Advance | 56.97 |
| Outstanding Prior Legal | 825.09 |
| Sheriff Commission | 3,285.78 |
| Total | 113,637.05 |

(Doc. 160-4, Ex. 7).

In September 2003, at the direction of Homecomings, Dean Morris filed a motion to dismiss the pending foreclosure suit and "close[d] its file due to reinstatement." (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶14). On September 17, 2003, on the motion of Bank One, the state district judge signed an order dismissing the foreclosure proceeding. (Doc. 160-4, Ex. 8). Dean Morris never billed plaintiff, and she made no direct payment to Dean Morris. (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶17).

In December 2003, at the request of Homecomings, Dean Morris filed, on behalf of Bank One, a second "Petition for Executory Process" seeking, a writ of seizure and sale to sell the mortgaged property. (Doc. 160-4, Ex. 9). Dean Morris paid the Clerk of Court $306.00 in advance for costs and deposited $1,200.00 with the Orleans Parish Civil Sheriff. (Doc. 160-4, Ex. 11, Ex. 12). Thereafter the writ of seizure and sale issued. (Doc. 160-4, Ex. 10).

On January 27, 2004, Dean Morris sent Ms. Dodge a Reinstatement Proposal, good through February 1, 2004, reflecting the following amounts:

|  |  |
|---|---|
| Payments Due | 6,801.12 |
| Late Charges | 200.04 |
| Escrow Deficit | 1,848.32 |
| Inspections | 45.00 |
| Appraisal/BPO | 105.00 |
| Foreclosure Attorney's Fees and Costs | 4,338.48 |
| Total | 13,337.96 |

(Doc. 160-4, Ex. 14). The proposal does not indicate that it is an "Estimate." Rather, the "Reinstatement Proposal" states, in pertinent part:

> Reserving to Lender the right to demand additional funds to correct any error or omission in these figures made in good faith whether mathematical, clerical, typographical, or otherwise and to reflect any transactions that may occur on or subsequent to the date of this reinstatement, the [] amounts are the amounts the lender will accept to waive the existing default and the acceleration of the mortgage loan, and to dismiss without prejudice, any pending foreclosure suit ("Reinstatement").

(Id.)

On March 4, 2004, Dean Morris advanced the Clerk of Court for Civil District Court an additional $350.00. (Doc. 160-4, Ex. 15). On March 19, 2004, Homecomings directed Dean Morris to place the foreclosure on hold, which Dean Morris did. (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶23). Dean Morris then notified the Orleans Parish Civil Sheriff to halt the sale of the property, scheduled for April 8, 2004. On April 5, 2004, the Civil Sheriff issued Dean Morris a bill of costs indicating total costs of $726.05 and refunded to Dean Morris $473.95. (Id. at ¶26). The Sheriff's bill of costs reflects that the matter "Settled for $16,301.67" and that there was a "repayment plan, plaintiff collected $4,000.00 as initial payment and an additional $12,301.67 over the life of plan." (Doc. 160-4, Ex. 16). Homecomings paid Dean Morris $3,437.55. (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶23). Dean Morris itemizes the Homecomings' payment and Sheriff's refund as follows:

|  |  |
|---|---|
| Civil Sheriff's Deposit | $1,200.00 |
| Clerk of Court Costs | $ 656.00 |
| Outsourcer Funds | $ 125.00 |
| Title Search/Review/Abstract | $ 532.00 |
| Process Server | $ 288.50 |
| Lenstar Technology Fee | $ 20.00 |
| PACER Fee | $ 10.00 |
| Title Curative | $ 125.00 |
| Attorneys Fee | $ 955.00 |

(Id. at ¶26).

Subsequently Ms. Dodge again became delinquent on her payments. On May 12, 2004, Homecomings again agreed to Ms. Dodge's request for a Repayment Agreement which provided for the payment of $13,185.33, including $1,296.00 for "attorney's fees" in several specified intervals ending July 16, 2004. (Doc. 190-4, Ex. 19). Ms. Dodge signed the agreement on May 13, 2004. (Doc. 190-2, Ex. 5, Answer to Interrogatory No. 8).

On July 23, 2005 Homecomings instructed Dean Morris to proceed with foreclosure on plaintiff's property. (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶23). Acting pursuant to that instruction, Dean Morris deposited another $1,200.00 with the Orleans Parish Civil Sheriff. (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶23, Doc. 160-4, Ex. 18).

On August 29, 2005, Hurricane Katrina devastated New Orleans and damaged plaintiff's property. On September 5, 2005, Homecomings directed Dean Morris to place the foreclosure on hold "in association with the hurricane." (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶31).

On July 19, 2006, Homecomings notified Dean Morris to "stop the foreclosure as the client accepted a short sale." (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶33).

5

A March 22, 2006 payoff quote, sent by Homecomings to Ms. Dodge reflected the total outstanding amount due on the loan to be $123,666.56, which included "Fees/Csts" of $3,601.94. (Doc. 190-4, Ex. 27). Homecoming accepted a "short sale" of $114,561.49 in full payoff on Ms. Dodge's loan. (Doc. 160-5, Ex. 21, p.31, Ex. 190-4, Ex. 27). Ms. Dodge did not make any direct payment to Dean Morris in connection with the short sale. (Doc. 160-4, Affidavit of Charles B. Dean, Jr. and John C. Morris, III, ¶33). Dean Morris billed Homecomings $810.00 which it paid. (Id. at ¶34). The final Civil Sheriff's bill for the foreclosure proceedings showed costs totaling $5,003.66.). (Id. at ¶35). On February 17, 2005, while the foreclosure proceedings against her were pending, Ms. Dodge, as well as a number of other plaintiffs, filed a putative class action suit against Dean Morris and various lender defendants alleging a variety of claims in the Civil District Court for the Parish of Orleans. Following two unsuccessful attempts to remove the case to federal court, a defendant successfully removed the suit to this Court in 2008. The petition alleges a class of lender defendants consisting of lenders "who used Dean Morris as their attorney, agent, and/or employee, and for whom or during the representation of whom Dean Morris charged and/or collected excessive fees and/or expenses from members of the Plaintiff Class." Fourth Supplemental and Amending Petition for Damages, ¶ IX. The petition further alleges that "Dean Morris, acting as the attorney, agent, and/or employee of all of the Lender Defendants instituted collection and/or foreclosure proceedings against the named plaintiffs . . . for sums alleged to be due under mortgages held by the Lender Defendants[]" and that Dean Morris "overstated to the named plaintiffs and to members of the Plaintiff Class the amount of court costs, sheriff's fees, attorney's fees and/or other expenses, thus impairing the rights of and causing harm to plaintiffs and members of the Plaintiff Class *Id,* at ¶ X, ¶ XI. Plaintiffs also allege that "[t]he Lender Defendants' obligations under the mortgage

6

and related agreements were non-delegable such that the Lender Defendants are liable for the acts and omissions of their attorney, with respect to these obligations." *Id.* at ¶ XIV.  The petition seeks damages under the following causes of action:

- conversion;
- unjust enrichment;
- intentional misrepresentation and fraud;
- negligent misrepresentation;
- breach of contract; and
- civil conspiracy.

While the suit remained pending in state court, the state district judge dismissed plaintiffs' negligence claims against Dean Morris.  Dean Morris now seeks summary judgment on all of Ms. Dodge's remaining claims.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th

Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Intentional Misrepresentation and Fraud

Because all of the claims alleged by plaintiff assert Louisiana state law claims, the Court applies Louisiana substantive law in analyzing the claims. To establish a claim for intentional misrepresentation a plaintiff must prove: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Systems Engineering and Security, Inc. v. Science & Engineering Associates, Inc*., 962 So.2d 1089, 1091(La. App. 4th Cir. 2007) (internal quotation and citation omitted).

Plaintiff asserts that the Reinstatement and Loan Payoff Proposals issued by Dean Morris included inflated attorneys fees and costs, and that "[t]he inflation of the fees and costs interfered with Ms. Dodge's contractual right to reinstate her mortgage contract by making reinstatment more

difficult or impossible." (Doc. 223, p. 4). The facts related to the individual proposals have to be analyzed to determine whether summary judgment is appropriate with respect to Ms. Dodge's claims of intentional misrepresentation.

Plaintiff has not produced any competent summary judgment evidence demonstrating that she relied on the alleged overcharges and sustained damage due to her reliance on the allegedly inflated figures in the February 10, 2003 proposals, which were the first representations made by Dean Morris to plaintiff concerning the attorneys fees and costs in connection with the then pending foreclosure proceeding. It is undisputed that in September 2003 plaintiff successfully reinstated her loan with Homecomings. Plaintiff has not produced any evidence reflecting the terms of that reinstatement or indicating whether the reinstatement included payment of the fees and costs reported by Dean Morris. Nor has plaintiff provided any evidence that the representations of costs and attorney fees in the February 10, 2003 proposals made reinstatement more difficult. Moreover, plaintiff has not submitted any evidence that she paid Dean Morris any fees in response to the February 10, 2003 proposals or that Dean Morris received any payment from Homecomings from funds paid by plaintiff as part of the reinstatement, for work in connection with its foreclosure activities to that point. Because plaintiff has failed to submit any evidence raising a genuine issue of material fact with respect to her reliance on the alleged overcharges and damage resulting from that reliance, Dean Morris is entitled to summary judgment on plaintiff's claim of intentional misrepresentation with respect to the February 10, 2003 Reinstatement Proposal and Estimated Payoff Quote.

As noted previously, Dean Morris sent plaintiff a second Reinstatement Proposal on January 27, 2004 indicating "Foreclosure Attorney's Fees and Costs" totaling $4,338.48. Thereafter Ms.

Dodge entered a reinstatement agreement with Homecomings dated May 13, 2004. (Doc. 190-2, Ex. 5). Plaintiff has not submitted any evidence suggesting that the representations as to costs and fees in the January 27, 2004 proposal made reinstatment any more difficult. Additionally, and significantly, the repayment agreement does not include a breakdown of what sums were included in calculating the reinstatement amount. Nor has plaintiff submitted any evidence that she actually paid Homecomings any amount for attorneys fees or costs. There is evidence that Homecomings paid Dean Morris $3,437.55, which Dean Morris calculated to include an attorney's fee of $955.00 after deducting its out of pocket costs from the amount paid by Homecomings. Plaintiff urges that $900.00 is the maximum "allowable" attorneys fee which can be charged for a completed foreclosure involving a federally insured loan. Plaintiff's contention is grounded on the belief that plaintiff is a third party beneficiary of a contract between, presumably Homecomings and Dean Morris which includes provisions limiting attorney's fees to the "allowable" amount under various agency/insurer regulations or requirements. Plaintiff has not provided any evidence of a contract between Homecomings and Dean Morris, nor has plaintiff provided any evidence that, even assuming plaintiff is a third party beneficiary of such a contract, that the contract or applicable regulations limit the allowable attorney fee at the time Dean Morris issued the January 27, 2004, reinstatement proposal to $900.00. Absent such evidence, plaintiff has failed to raise a genuine issue of material fact with respect to damages.

Moreover, even assuming that plaintiff is a third party beneficiary of a contract between Homecomings and Dean Morris limiting Dean Morris's attorneys fees to $900.00, for Court finds that the overpayment of $95.00 did not damage plaintiff considering the terms of the "short sale" of the property between Homecomings and plaintiff which allowed plaintiff to pay off her loan and

mortgage on the property at a considerable savings to herself.  Dean Morris is entitled to summary judgment on plaintiff's claim of intentional misrepresentation based on the January 27, 2004 Reinstatement Proposal.

Plaintiff also asserts that the March 22, 2006, quote from Homecomings in the amount of $123,666.56, reflecting "Fees/Csts to 3/21/06" of $3,601.94, contained misrepresentations as to fees and costs.  Plaintiff has not provided competent summary judgment evidence documenting her reliance on that alleged misrepresenation and damage resulting therefrom.  In fact, the evidence establishes that Ms. Dodge successfully negotiated a complete payoff of her property for $114,561.49, more than $9,000,000.00 less than the amount stated in the March 22, 2006 payoff quote.  In fact, the negotiated payoff amount, which was not paid until July 2006, was only $1,381.33 more than the principal and interest reflected on the March 22, 2006 quote.  Given Ms. Dodge's successful negotiation of a "short sale" on her loan, the Court concludes that she has failed to raise a genuine issue of material fact concerning damages as a result of any alleged misrepresentations concerning fees and costs in reinstatement quotes or payoff quotes Therefore, Dean Morris is entitled to summary judgment on all of plaintiff's claims of intentional misrepresentation.

Turning to plaintiff's fraud claim, "[f]raud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage for one party or to cause a loss or inconvenience to another.  Fraud may also result from silence or inaction." La. Civ. Code art. 1953. An action for fraud requires: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Gonzales v. Gonzales*, 20 F.3d 557, 563 (La. App. 4th Cir. 2009).  Because the elements of fraud are virtually identical to those

11

necessary to establish a claim of intentional misrepresentation, the same reasoning used in analyzing the claims of intentional misrepresentation against the Dean Morris applies in evaluating the claims of fraud. For the reasons stated herein above, the motion for summary judgment is granted as to plaintiff's claims of fraud.

## Conversion Claim

"[C]onversion is a tort consisting of wrongfully depriving a person of possession of his property. The fault may be either the original wrongful acquisition or the subsequent wrongful detention of possession. But, there must be either a wrongful taking or a wrongful detention." *Oge v. Resolute Insurance Company*, 217 So.2d 738, 740-741 (La. App. 3rd Cir. 1969), citing *Import Sales, Inc. v. Lindeman*, 92 So.2d 574 (1957). Plaintiff filed no opposition to this portion of Dean Morris's motion for summary judgment. Nevertheless, the Court assumes that plaintiff opposes the dismissal of the conversion claim.

It is undisputed that plaintiff did not directly pay any money to Dean Morris. Additionally, plaintiff has not provided any evidence that Dean Morris was not legally entitled to the funds paid to it by Homecomings from funds plaintiff may have paid to Homecomings. Considering that lack of evidence, Ms. Dodge has failed to raise a genuine issue of material fact concerning whether Dean Morris wrongfully deprived her of any property. Dean Morris is entitled to summary judgment on plaintiff's conversion claim.

## Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides, in pertinent part, that:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a

contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) no other available remedy at law. *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995). "The unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3rd 243, 244 (La. 2010), quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st. Cir. 1988).

Dean Morris seeks summary judgment on the unjust enrichment claim urging that because plaintiff has other remedies available, she cannot state a claim for unjust enrichment. Defendant's contention is well founded. Ms. Dodge had other remedies available to her, including claims for intentional misrepresentation and fraud.

That Ms. Dodge has failed to prevail on the other remedies available to her does not negate the fact that such remedies were available to her. In *Walters v. MedSouth Record Management, LLC* the Louisiana Supreme Court concluded that because plaintiff had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment." *Id.* The Court further opined, "[m]oreover, we find it of no moment that plaintiff's tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* Similarly, "the existence of a claim on an express or implied contract precludes application of *actio de in rem verso*, for there does not exist one of the latter's requirements, that there be no other remedy available at law (subidiarity)." *Morphy, Makofsky, & Masson, Inc. v. Canal Place 2000*, 538 So.2d

569, 572 (La. 1989). The availability of alternative remedies bars Ms. Dodge's claim for unjust enrichment. Therefore, the Court grants the summary judgment on plaintiff's claim of unjust enrichment.

## Civil Conspiracy

Article 2324A of the Louisiana Civil Code provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable *in solido*, with that person, for the damage caused by such act." However, it is well recognized that Article 2324 does not itself "impose liability for a civil conspiracy." *Ross v. Conoco, Inc.*, 828 So.2d 546, 552 (La. 2002). Rather, "[t]he actionable element in a claim under [Article 2324] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they commit in whole or in part." *Id.* (internal quotation and citation omitted). As noted herein above, Ms. Dodge has failed to establish a genuine issue of material fact with respect to a tort claim against Dean Morris. Because Dean Morris is entitled to summary judgment on all of plaintiff's underlying tort claims, there can be no predicate tort claim for plaintiff's civil conspiracy claim. Therefore, Dean Morris is also entitled to summary judgment on the civil conspiracy claim.

Moreover, even assuming *arguendo* that Ms. Dodge had raised a genuine issue of material fact with respect to a predicate tort offense, Dean Morris would nonetheless still be entitled to summary judgment on this claim. To establish a conspiracy, plaintiff must produce evidence of an agreement between the parties. *Legier and Matherne, APAC v. Great Plains Software, Inc*., 2005 WL 1431666, *8 (E.D. La. May 31, 2005).

> Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be by actual knowledge of both parties or over actions with one another, or that can be inferred from the knowledge

>of the alleged co-conspirator of the impropriety of the actions taken
>by the other co-conspirator.

*Id.* (internal quotation and citation omitted). Plaintiff does not offer any specific evidence to establish the requisite agreement to commit a tort. In the absence of evidence of an agreement to commit an underlying tort, Dean Morris is entitled to summary judgment on this claim.

<u>Breach of Contract</u>

The petition alleges that "Dean Morris' actions on behalf of the Lender Defendants violated provisions of the mortgage and related agreements between plaintiffs and the Lender Defendants." *Bauer v. Dean Morris*, Fourth Supplemental and Amending Petition for Damages, ¶ XIV. Under Louisiana law, "[t]o assert a cause of action for breach of contract, the [plaintiff] must prove both the existence of a contract and privity." *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002).

Dean Morris contends that the claim must fail because there is no contract between Dean Morris and Ms. Dodge. Plaintiff claims that she is a third party beneficiary of the contract between Dean Morris and plaintiff's lender which provides for an "allowable" attorney fee of $900.00 for a full foreclosure proceeding in Louisiana. Plaintiff however submitted no evidence concerning the contract under which she claims to a third party beneficiary and failed to identify the contract relied upon, although presumably it would be the contract between Dean Morris and Homecomings. Absent evidence of the contract relied upon, plaintiff cannot raise a genuine issue of material fact on his breach of contract claim, and Dean Morris is entitled to summary judgment on the breach of contract claim. Accordingly,

**IT IS ORDERED** that Dean Morris's motion for summary judgment is granted.

New Orleans, Louisiana, this 31st day of March, 2011.

 

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE